[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
July 21, 2004
THOMAS K. KAHN
CLERK

_____

No. 03-11604

_____

D.C. Docket No. 02-01217 CV-A-N

GEORGE EVERETTE SIBLEY, JR.,

Petitioner-Appellant,

versus

GRANTT CULLIVER, Warden
DONAL CAMPBELL, Commissioner,
Alabama Department of Corrections,

Respondents-Appellants.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

**(July 21, 2004)**

Before TJOFLAT, ANDERSON and BIRCH, Circuit Judges.

TJOFLAT, Circuit Judge:

George Sibley Jr., along with his wife, Lynda Lyon-Sibley, were convicted of capital murder on October 4, 1993 and sentenced to death.[1]  Though Sibley consistently refused the assistance of counsel on appeal and did not file any briefs pro se, the Alabama Court of Criminal Appeals examined the trial record "to determine whether he validly waived counsel, whether there was sufficient evidence at trial to support his conviction, and whether he was properly given the death penalty."[2]  On March 21, 1997, it affirmed his conviction.  See Sibley v. State, 775 So. 2d 235 (Ala. Crim. App. 1997).

On April 20, 2000, the Sibleys mailed several members of Congress a "petition for orders commanding release from unlawful restraint of liberty."  It

---

[1]  The Alabama Court of Criminal Appeals summarized the facts as follows:

In responding to a call placed by a concerned citizen who had overheard a child calling for help, an Opelika policeman, [Sgt.] Roger Lamar Motley, was killed in the line of duty.  After making an initial inquiry of Sibley, Officer Motley was gunned down by Sibley and his codefendant, Lynda Lyon Block, both of whom were fleeing from Florida to avoid being sentenced on assault charges.
. . .
The prosecution's case was virtually impenetrable.  The State produced 12 eyewitnesses, made a thorough presentation of forensic evidence tying Sibley to the murder of Officer Motley, and presented Sibley's statement and testimony.  Sibley admitted that he shot Officer Motley, but argued that his actions were in self defense.

Sibley v. State, 775 So. 2d 235, 240 (Ala. Crim. App. 1997).

[2]  This is the description offered by the federal district court that later rejected Sibley's petition for habeas corpus.

declared that they were imprisoned because of a vast conspiracy involving the American Bar Association, the Alabama Bar Association, and the Alabama court yystem, apparently dedicated to suppressing the existence of the "true" Thirteenth Amendment, which has something to do with titles of nobility. "Since lawyers and judges accept the titles 'Esquire' and 'The Honorable,' it is argued they are not citizens and the entire judicial system is illegal."[3]

In the meantime, the Alabama Supreme Court appointed an attorney to appeal the judgment of the court of criminal appeals on Sibley's behalf. Sibley repeatedly objected to this appointment. On May 12, 2000, after considering the attorney's arguments, the Alabama Supreme Court affirmed Sibley's conviction. Ex parte Sibley, 775 So. 2d 246 (Ala. 2000). Sibley did not seek certiorari in the United States Supreme Court or state or federal post-conviction relief. The deadline for seeking a writ of certiorari was August 10, 2000.

On July 12, 2001, Sibley filed a Notice with the Alabama Supreme Court (hereinafter, "the Notice"). It read, in relevant part, "We, George Everette Sibley and Lynda Lyon-Sibley . . . give notice that we lodged an appeal against convictions of 'capital murder' and sentence of death . . . . Our appeal documents were mailed to certain members of the Congress of the United States of America

_____

[3] See supra, note 2.

3

on April 20, 2000 and supplemented and/or amended thereafter."[4]  The Notice closed by emphasizing, "This Notice may not be construed as a motion or pleading, but only as a notice to the fact that we are actively appealing the convictions and sentences contrived against us in a venue Constitutionally available, and our reasons for not doing so in the Unified Judicial System."  The Sibleys disclaimed any involvement in the Alabama court system and simply wished to inform the courts that their "appeal" was pending before Congress.  The Alabama Supreme Court has apparently never acted on this filing.

August 10, 2001 was the deadline established by 28 U.S.C. § 2244(d)(1) for Sibley to file a federal petition for a writ of habeas corpus.  Following this deadline, he filed a variety of additional notices with the Alabama Supreme Court, which can only be described as rambling and bizarre.

Finally, six days before his scheduled execution, on November 1, 2002, Sibley filed a petition for a writ of habeas corpus and a motion for stay of execution with the United States District Court for the Middle District of

---

[4]  The Notice purported to inform the court of four other things, few of which make any sense.  First, it claimed that the Alabama courts had violated the Fourteenth Amendment by treating them as serfs.  Second, it emphasized that the Sibleys did not knowingly or willingly trade with any enemy of the "Constitutional United States."  Third, it declared that the Sibleys did not accept the "ridiculous invention called 'self-representation' (or 'pro se')" and did not seek any "privileges or benefits under the 14th Amendment."  Finally, it contended that Sibley and his wife had not authorized the actions of the attorneys who had been appointed to represent them before the state supreme court.

4

Alabama. The district court stayed his execution to determine whether the habeas petition—Sibley's first—had been filed within AEDPA's one-year statute of limitations. See 28 U.S.C. § 2244(d)(1). It ultimately concluded that the petition was untimely.

On appeal, Sibley raises three issues. First, he contends that he was entitled to statutory tolling of AEDPA's statute of limitations under 28 U.S.C. § 2244(d)(2). Second, he maintains that, because he is raising a claim of actual innocence, it would be unconstitutional to apply AEDPA's statute of limitations to him. Finally, he claims that his death sentence should be vacated based on the Supreme Court's decision in Ring v. Arizona, 536 U.S. 584, 122 S. Ct. 2428, 153 L. Ed. 2d 556 (2002). We reject these claims as they are wholly without the slightest trace of redeeming merit.

I.

AEDPA contains a one-year statute of limitations for filing a federal habeas petition, which in this case began running on August 10, 2000, the deadline for filing a petition for certiorari with the United States Supreme Court. See 28 U.S.C. § 2244(d)(1)(A). Under this provision, Sibley's presumptive deadline for filing a habeas petition was August 10, 2001. He did not file his petition until November 1, 2002, making it untimely.

The statute provides that this limitation period may be tolled during any time in which "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending . . . ." Id. § 2244(d)(2). Sibley contends that his July 12, 2001 Notice to the Alabama Supreme Court, filed a month before his deadline for seeking federal habeas relief, constitutes a properly filed application for State post-conviction or collateral review that triggered tolling under § 2244(d)(2). Because the Alabama Supreme Court has never acted on that filing, he maintains that it is still pending, and so the limitation period for filing his federal habeas petition is still in abeyance. As a result, he argues, his November 1, 2002 federal habeas petition was timely.

The question before us is whether the 2001 Notice Sibley filed with the Alabama Supreme Court constitutes "a properly filed application for State post-conviction or other collateral review" that tolled the statute of limitations for filing a federal habeas petition. This encompasses three separate inquiries: (1) whether Sibley's Notice was an "application for State post-conviction or other collateral review" at all, (2) if so, whether it was "filed", and (3) if so, whether it was filed "properly."

6

A.

Beginning with the first step of our analysis, we conclude that Sibley's filing did not toll § 2244(d)(1)'s statute of limitations because it did not even constitute "an application for State post-conviction or other collateral review." Three separate and independently adequate reasons support this conclusion. First, the Notice did not actually request relief from the court from Sibley's execution. The simple fact that Sibley mailed <u>something</u> to the court is surely insufficient to trigger § 2244(d)(2)'s tolling provision. By definition, the defining factor of an application for review is that it seeks review. As the First Circuit has held,

> Giving the term "application" its natural meaning, a filing that purports to be an application for State post-conviction or other collateral review with respect to the pertinent judgment or claim must set forth the grounds upon which it is based, and must state the relief desired; it must attack collaterally the relevant conviction or sentence.

<u>Voravongsa v. Wall</u>, 349 F.3d 1, 6 (1st Cir. 2003). As far as § 2244(d)(2) is concerned, Sibley's notice is the legal equivalent of a greeting card—a nice gesture, but not enough to toll the deadline for filing a federal habeas petition.

Second, even if we do construe the Notice as implicitly requesting review or relief of some sort, we still cannot in good faith view it as an "application for post-conviction or other relief" because it does not even attempt to make a good faith effort to offer at least a potentially plausible or coherent basis for granting Sibley

7

relief. To take an extreme case, a document captioned "Application for Post-Conviction or Other Relief," which contained nothing more than the phrase "Let me out!," would not trigger § 2244(d)(2)'s tolling provisions. Instead, the document must contain something vaguely approaching legitimate, relevant, coherent legal analysis.

In Ford v. Moore, 296 F.3d 1035, 1038 (11th Cir. 2002), we held that a filing will be considered an application for state post-conviction review sufficient to toll AEDPA's statute of limitations "whether the basis of the attack [it contains] is grounded in federal or state law." One fair inference of this holding is that where a petitioner fails to include any meaningful federal or state legal analysis, we need not consider his filing an application for state post-conviction review.

This is not to say that a document, particularly a pro se pleading, which we construe liberally, must necessarily even successfully state a claim to constitute an application for review. All we are holding is that there is an outer limit to the nonsense a petitioner may include in a purported "application for post-conviction or other relief" and still have it count as such. Ramblings about how Sibley is not a "serf," is not "in trade or business with any enemy of the Constitutional United States," does not have a social security number, does not believe in self-representation yet rejects all court-appointed attorneys, and for unspecified

reasons was somehow beyond the jurisdiction of any Alabama court, are insufficient for a court to consider something a legitimate filing. This is by no means a high standard; we simply believe Congress enacted § 2244(d)(2) to allow the deadline for federal filings to be tolled when a prisoner legitimately pursues state remedies in good faith, and did not intend it to be triggered simply because a prisoner mailed nonsense to a state court.[5]

Third, the various disclaimers the Notice contains prove that Sibley's Notice is not an application for State post-conviction or other collateral review. The Notice expressly declared, "This Notice may not be construed as a motion or pleading, but only as a notice to the fact that we are actively appealing the convictions and sentences contrived against us in a venue Constitutionally available, and our reasons for not doing so in the Unified Judicial System." Elsewhere, it states, "We do not apply for, nor are we eligible for 'civil rights', privileges or benefits under the 14th Amendment." Thus, by its own terms, the

---

[5] In Artuz v. Bennett, 531 U.S. 4, 9, 121 S. Ct. 361, 364, 148 L. Ed. 2d 213 (2000), the Supreme Court held, "[T]he question whether an application has been 'properly filed' is quite separate from the question whether the claims contained in the application are meritorious . . . ." The Artuz Court, in focusing specifically and exclusively on 28 U.S.C. § 2244's "properly filed" language, did not address the unusual threshold question of how to tell whether a filing constitutes an "application for State post-conviction or other collateral review" in the first place. Such an inquiry necessarily entails at least some form of superficial examination of whether the document contains something that even vaguely resembles a claim potentially justifying review or relief.

9

Notice was not to be construed as an application for review. For these reasons, Sibley cannot even clear the first threshold for proving his entitlement to tolling under § 2244(d)(2).

B.

Even if we were to give Sibley the benefit of the doubt and accept arguendo that his Notice was an application for State post-conviction or other collateral review, he does not qualify for § 2244(d)(2) statutory tolling because it was not "filed," as that term has been defined by the Supreme Court. In <u>Artuz v. Bennett</u>, 531 U.S. 4, 9, 121 S. Ct. 361, 364, 148 L. Ed. 2d 213 (2000) (emphasis added), the Court held that "[a]n application is 'filed,' as that term is commonly understood, when it is delivered to, and accepted by, <u>the appropriate court officer</u> for placement into the official record." Alabama Rule of Criminal Procedure 32.5 states that a post-conviction petition must be "filed in and decided by the court in which the petitioner was convicted." Sibley's Notice was mailed to the Alabama Supreme Court. Because it was not sent to the proper court, it was not "filed," and so was insufficient to trigger § 2244(d)(2)'s tolling provisions.

Sibley points out that Rule 32.5 goes on to state, "If a petition is filed in another court, it shall be transferred to the court where the conviction occurred." He contends that, under this Rule, the Alabama Supreme Court was under an

10

obligation to ensure that his Notice was filed with the trial court. Nothing in the record suggests that the Alabama Supreme Court ever transferred the application anywhere, however—most likely because it did not recognize the Notice as being a petition for post-conviction relief, see supra Section I.A. Consequently, the petition was never "filed."

Sibley might respond that it is unfair to penalize him because the state supreme court failed to perform its mandatory statutory duty. Under § 2244(d)(2), however, statutory tolling is available only if an application for review is filed; it does not contain language directing us to consider whether a putative petitioner is responsible for an application not being successfully filed. Congress could have written the statute in such a way that statutory tolling was available unless it was the putative petitioner's fault that an application for review was not filed. This was the approach it took in 28 U.S.C. § 2254(e)(2), which states that a petitioner may not receive an evidentiary hearing "[i]f the applicant has failed to develop the factual basis of a claim in State court proceedings" (emphasis added). The Court held, "In its customary and preferred sense, 'fail' connotes some omission, fault, or negligence on the part of the person who has failed to do something. . . . In this sense, a person is not at fault when his diligent efforts to perform an act are thwarted, for example, by the conduct of another or by happenstance." Williams

11

v. Taylor, 529 U.S. 420, 431-32, 120 S. Ct. 1479, 1488, 146 L. Ed. 2d 435 (2000). Based on its interpretation of the term "fail," the Court concluded that § 2254(e)(2) was a fault-based provision. "[A] failure to develop the factual basis of a claim is not established unless there is a lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." Id. at 432, 120 S. Ct. at 1488.

The Williams Court also pointed out, however, that "[h]ad Congress intended a no-fault standard, it would have had no difficulty in making its intent plain. It would have had to do no more than use, in lieu of the phrase 'has failed to,' the phrase 'did not.'" Id. Section 2244(b)(2) is the type of provision to which the Court was referring. Unlike § 2254(e)(2), it does not contain language directing us to consider whether the prisoner is at fault for not having filed the application; our only concern is whether an application was filed at all, regardless of fault. Thus, even if the Alabama Supreme Court had a duty to forward Sibley's misfiled application to the court that convicted him, its failure to actually do so precludes him from invoking statutory tolling under § 2244(d)(2)'s no-fault standard.

C.

"Where the petition is not 'properly filed' there is no tolling of the one year limitations period." Hurley v. Moore, 233 F.3d 1295, 1297-98 (11th Cir. 2000). Even if we were somehow to conclude that Sibley's Notice constituted an application for post-conviction relief, and that it had been"filed" with the court (perhaps because of the state supreme court's duty to forward it), it surely was not filed "properly," as § 2244(d)(2) requires. "[J]ust because [an] application is pending, does not mean that it was properly filed. For example, if an application is erroneously accepted by the clerk without the requisite filing fee, it will be pending, but not properly filed." Christian v. Baskerville, 232 F. Supp. 2d 605, 607 (E.D. Va. 2001). "[A]n application is 'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings. These usually prescribe, for example, the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee." Artuz, 531 U.S. at 8, 121 S. Ct. at 364; see, e.g., Hurley, 233 F.3d at 1298 (holding that a state application for relief had not been properly filed because it was not accompanied by an oath as required by state law). For the reasons discussed in the previous Section, the application was not filed properly since it was delivered to the wrong court, regardless of whether the Alabama Supreme

13

Court had a duty to correct Sibley's error.  The Notice also violated a host of other

filing requirements as well.[6]

_____

[6]  Though Sibley also flouted the state statute of limitations for seeking post-conviction relief, precedent forecloses us from using Alabama's statute of limitations, as it existed prior to 2000, as a basis for concluding that Sibley's Notice was improperly filed.

Alabama Rule of Criminal Procedure 32.6(a) states, "A petition may be filed at any time after entry of judgment and sentence (subject to the provisions of rule 32.2(c))."  Rule 32.2(c), as it existed both in 1993, at the time of Sibley's conviction, and in 1997, at the time the court of criminal appeals rejected Sibley's court-initiated appeal, stated in relevant part,

> [T]he court shall not entertain any petition for relief from a conviction or sentence on the grounds specified in Rule 32.1(a) and (f), unless the petition is filed . . . within two (2) years after the issuance of the certificate of judgment by the Court of Criminal Appeals . . . . The court shall not entertain a petition based on the grounds specified in Rule 32.1(e) unless the petition is filed within the applicable two-year period specified in the first sentence of this section, or within six (6) months after the discovery of the newly discovered material facts, whichever is later . . . .

This Rule sets forth two limitations periods: one for claims brought under Rules 32.1(a) and (f), involving, respectively, general constitutional challenges and failures to appeal, and a separate one for claims brought under Rule 32.1(e), involving newly discovered evidence.  As discussed above, see supra Section I.A, Sibley's Notice did not contain any coherent allegations, so it is difficult to determine which limitations period applies.  Nevertheless, since he definitely did not bring any newly discovered evidence to the attention of the court, and had been granted an appeal by the court of criminal appeals, if the Notice is to be construed as an application for relief at all, it should be viewed as being brought under Rule 32.1(a).  See Ala. R. Crim. P. 32.1(a) ("[A]ny defendant who has been convicted of a criminal offense may institute a proceeding in the court of original conviction to secure appropriate relief on the ground that[] [t]he constitution of the United States or of the State of Alabama requires a new trial, a new sentence proceeding, or other relief.").  This means that Sibley's application for post-conviction relief had to have been filed within two years of his direct criminal appeal, or no later than March 21, 1999.  Since his Notice was submitted on November 1, 2002, it fell well outside of this deadline.

This circuit has held, in general, that when a state petition for post-conviction relief fails to comply with state filing deadlines, it is not "properly filed."  Hurley, 233 F.3d at 1298; see, Drew v. Dep't of Corr., 297 F.3d 1278, 1286 (11th Cir. 2002) ("Because Drew's third [state] motion [for review] was untimely and did not allege facts relevant to any of the statutory exceptions to Florida's filing deadline, the motion was not properly filed under the AEDPA.").  In Siebert v. Campell, 334 F.3d 1018, 1027 (11th Cir. 2003), however, we held that, notwithstanding the language of Rule 32, adherence to its limitation period was not, until the year

14

Alabama Rule of Criminal Procedure 32.6(a) provides, "The petition should be filed by using or following the form accompanying this rule. If that form is not used or followed, the court shall return the petition to the petitioner to be amended to comply with the form." Sibley's Notice made no effort whatsoever to comply with any of the form's requirements. See Ala. R. Crim. P. 32 app. (providing forms for Alabama post-conviction proceedings)

Rule 32.6(a) also states, "The petition shall be accompanied by two copies thereof." Again, we find no evidence in the record suggesting that Sibley complied with this. Furthermore, the Rule mandates,

> [The petition] shall also be accompanied by the filing fee prescribed by law or rule in civil cases in the circuit court unless the petitioner applies for and is given leave to prosecute the petition in forma pauperis. If the petitioner desires to prosecute the petition in forma pauperis, he or she shall file the "In Forma Pauperis Declaration" at the end of the form. In all such cases, the petition shall also be accompanied by a certificate of the warden or other appropriate officer of the institution in which the petitioner is confined, stating

---

2000, regarded as an actual restriction by which Alabama prisoners had to abide in filing for post-conviction relief. We found that, prior to 2000, "Alabama law made clear . . . that noncompliance with the Rule 32 time bar did not divest courts of discretion to entertain late petitions should they choose to do so, at least in the absence of an appropriate pleading by the state of a [statute of] limitations defense." Id. The 2000 case Williams v. State, 783 So. 2d 135, 137 (Ala. Crim. App. 2000), reinterpreted Rule 32 as being jurisdictional, and hence mandatory.

Because, prior to 2000, the Rule 32 time-bar was interpreted by Alabama courts as optional, we concluded in Siebert that the petitioner's "non-compliance with Rule 32's time bar . . . did not render his post-conviction applications [im]properly filed." 334 F.3d at 1032 (quotation marks omitted). This reasoning compels us to overlook Sibley's non-compliance with the Rule as well.

15

the amount of money or securities on deposit to the petitioner's credit in any account in the institution for the previous twelve (12) months . . . .

Nothing in the record before us suggests that Sibley submitted a filing fee or a petition to proceed in forma pauperis. For these reasons, Sibley's Notice was not "properly filed," and so did not trigger statutory tolling under § 2254(d)(2).

We note in closing that none of the documents Sibley attempted to file with the state courts after August 10, 2001—the deadline for filing a federal habeas petition— could in any way toll that deadline because, once a deadline has expired, there is nothing left to toll. A state court filing after the federal habeas filing deadline does not revive it. See Moore v. Crosby, 321 F.3d 1377, 1381 (11th Cir. 2003) ("While a 'properly filed' application for post-conviction relief tolls the statute of limitations, it does not reset or restart the statute of limitations once the limitations period has expired. In other words, the tolling provision does not operate to revive the one-year limitations period if such period has expired."). Petitioner may not attempt to resurrect a terminated statute of limitations by subsequently filing documents that purport to "relate back" to previously submitted documents that were, in themselves, insufficient to toll the statute. Id. at 1381 ("The statutory tolling provision does not encompass a period of time in which a state prisoner does not have a 'properly filed' post-conviction application

16

actually pending in state court."). Consequently, we need not examine the substance of his later filings because, even if they were "properly filed application[s] for State post-conviction or other collateral review," they would not extend the August 10, 2001 deadline.

## II.

Though § 2244(d)(2) sets forth the standard for "statutory tolling" of § 2244(d)'s limitations period, this period—like most other nonjurisdictional limitations periods—is also subject to equitable tolling. "In order to be entitled to the benefit of equitable tolling, a petitioner must act with diligence, and the untimeliness of the filing must be the result of circumstances beyond his control." Drew v. Dep't of Corr., 297 F.3d 1298, 1286-87 (11th Cir. 2002). Sibley makes no effort to demonstrate that he meets these criteria, and so is ineligible for equitable tolling.

Sibley contends instead that it would be unconstitutional under the Suspension Clause[7] to apply this limitations period to him because, in addition to his underlying claim that his constitutional rights were violated, he is also asserting a claim of actual innocence. The Tenth Circuit has held that § 2244(d)'s

---

[7] See U.S. Const. Art. I, § 9, cl. 2 ("The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it.").

17

limitations period does not apply where a petitioner makes such a claim.  See

Malone v. Oklahoma, Nos. 03-6175 & 03-6246, 2004 U.S. App. LEXIS 11245, at

*7 (10th Cir. June 8, 2004) ("[E]quitable tolling would be appropriate, for

example, when a prisoner is actually innocent . . . .").  Our precedent prohibits us

from reaching this question in this case, however.  As we held in Wyzykowski v.

Dep't of Corr., 226 F.3d 1213, 1218 (11th Cir. 2000), "[T]he factual issue of

whether the petitioner can make a showing of actual innocence should be first

addressed, before addressing the constitutional issue of whether the Suspension

Clause requires such an exception for actual innocence."  Following Wyzykowski,

we decline to reach the merits of this issue because, even assuming that § 2244's

limitations period could not be constitutionally applied to a prisoner who made a

sufficient showing of actual innocence, Sibley failed to do so.

There are two different ways in which a person sentenced to death might be

able to show "actual innocence."  First, he might attempt to prove his innocence of

the underlying capital offense itself.  In Schlup v. Delo, 513 U.S. 298, 317, 115 S.

Ct. 851, 862, 130 L. Ed. 2d 808 (1995), the Supreme Court held that a prisoner

attempting to make such a showing must raise "new facts" that cast "sufficient

doubt upon [his] guilt to undermine confidence in the result of a trial without the

assurance that the trial was untainted by constitutional error."  In practical terms,

18

this means that the petitioner must show that "'a constitutional violation has probably resulted in the conviction of one who is actually innocent.' To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." Id. at 327, 115 S. Ct. at 867 (quoting Murray v. Carrier, 477 U.S. at 496, 106 S. Ct. at 2649).

Either in addition, or as an alternative, to this a petitioner may attempt to demonstrate that, whether or not he is guilty of the capital offense, he is "innocent" of the death penalty because none of the aggravating factors legally necessary for invocation of the death penalty applied.[8] The Supreme Court has emphasized that, in making this determination, a court may not look to new evidence concerning mitigating factors; once it has satisfied itself that the minimum state law requirements concerning the presence of aggravating factors have been satisfied, its review is complete. Sawyer v. Whitley, 505 U.S. 333, 347, 112 S. Ct. 2514, 2524, 120 L. Ed. 2d 269 (1992) ("[T]he 'actual innocence'

---

[8] The petitioner in a recent Supreme Court case, Dretke v. Haley, 124 S. Ct. 1847, 158 L. Ed. 2d 659 (2004), attempted to apply this reasoning in a non-capital case, claiming that he was "actually innocent" of a habitual-offender sentencing enhancement he received. The petitioner attempted to use this actual innocence as a gateway through which the court could consider procedurally defaulted claims in his federal habeas petition concerning constitutional deficiencies in his sentencing hearing. The Supreme Court refused to rule on the issue, and instead remanded the case for the district court to address the petitioner's other, non-defaulted claims.

requirement must focus on those elements that render a defendant eligible for the death penalty, and not on additional mitigating evidence that was prevented from being introduced as a result of a claimed constitutional error."). To make this showing, a petitioner "must show by clear and convincing evidence that, but for a constitutional error, no reasonable juror would have found the petitioner eligible for the death penalty." Id., 505 U.S. at 336, 112 S. Ct. at 2517. Thus, a petitioner challenging his underlying conviction faces a lower burden of proof than a petitioner challenging the existence of aggravating circumstances rendering him death-eligible.

Sibley brings only the first type of challenge; he claims he is not guilty of murdering Officer Motley because he shot at Motley in self-defense, and regardless of why he was shooting at Motley, his wife fired the fatal shot. In support of these claims, Sibley points to three pieces of information. First, he maintains that unspecified information in Officer Motley's personnel file, to which he seeks access, would demonstrate his history of aggressive behavior that would demonstrate Sibley acted in self-defense. Second, Sibley alleges that his stepson is willing to testify that he (the stepson) had not cried for help on the day in question. According to the district court, however, Sibley "has presented no evidence to the court, by affidavit or otherwise, to show what the stepson would,

in fact, have testified." Finally, he contends that there is new evidence that his wife (who has already been executed) saw one of her bullets hit Motley in the chest. Again, the district court noted, "No evidence to that effect has been presented to the court, and the court is unaware of what form it might take."

Sibley's actual innocence claim is hindered at the outset by a fatal shortcoming—he has not presented any actual evidence to the district court. He is not privy to the contents of Motley's personnel file and offers no affidavits from either his stepson or wife. Consequently, he has provided no basis upon which a court can second-guess the jury's verdict.

Nor can Sibley bootstrap the right to an evidentiary hearing from this paucity of evidence. Sibley contends that Wyzykowski, 226 F.3d at 1219, entitles him to discovery and a hearing on his actual innocence claims. The case stands for no such propositions, however. In Wyzykowski, the petitioner made a claim of actual innocence along with his otherwise time-barred habeas petition. The district court dismissed the petition as time-barred without ruling on whether the petitioner had actually made a showing of actual innocence, or whether such a showing warranted an exception to § 2244's statute of limitations. On appeal, we remanded the case to the district court with directions to determine whether the petitioner had demonstrated his innocence. Id. at 1219 ("[W]e decline to address

21

the factual issue whether Wyzykowski can make a showing of actual innocence, preferring that the district court do so in the first instance."). Nothing in our opinion required that the district court grant him either discovery or an evidentiary hearing.

As the Eighth Circuit held in Oswald v. Gammon, "The petitioner must make a threshold showing of actual innocence to warrant a hearing. The timing of the submission is relevant, as is the likely credibility of the affiants." No. 94-3044, 1995 U.S. App. LEXIS 6229, at *3 (8th Cir. Mar. 29, 1995) (quotation marks and citation omitted). In a separate case, that court elaborated that our "confidence in the outcome of [the petitioner's] state trial" must be "undermined" before he is entitled to a hearing "for the purpose of developing the evidence needed to pass his procedurally defaulted habeas claims through the actual innocence gateway." Davis v. Gammon, 27 Fed. Appx. 715, 717 (8th Cir. 2001); see also Patterson v. Bartlett, 56 Fed. Appx. 762, 764 (9th Cir. 2002) (holding that a district court did not abuse its discretion in failing to grant an evidentiary hearing to a habeas petitioner claiming actual innocence because "[i]t is unlikely that an evidentiary hearing on the allegations contained in the affidavits would produce the sort of reliable evidence of actual innocence that Schlup demands"). Our confidence in Sibley's guilt remains substantially solid. Consequently,

22

Sibley's demands lack legal foundation.[9]

Even accepting Sibley's factual allegations at face value, they do not meet

the standard articulated in Schlup for making a finding of actual innocence.

Assuming Officer Motley had a history of aggression and nonfatal violent

---

[9] Some courts have applied 28 U.S.C. § 2254(e)(2) in determining when a petitioner is eligible for an evidentiary hearing on his actual innocence contention. That section states:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
>
> > (A) the claim relies on—
> >
> > > (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> > >
> > > (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
> >
> > (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense

Id.

We do not believe this provision governs the availability of evidentiary hearings when petitioners seek to introduce evidence concerning actual innocence. By its own terms, § 2254(e) applies only where a petitioner "has failed to develop the factual basis of a claim in State court." The term "claim" appears to refer to the substantive claim for relief upon which the petition for habeas corpus is based. See, e.g., 28 U.S.C. § 2254(d) (limiting the circumstances under which "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall . . . be granted with respect to any claim that was adjudicated on the merits in State court") (emphasis added). This case involves a petitioner who wishes to adduce additional facts to support his allegation of actual innocence. While we have referred to that allegation throughout this opinion as a "claim of actual innocence," it is not a "claim" for purposes of § 2254. An actual innocence allegation is, instead, a "gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." Herrera v. Collins, 506 U.S. 390, 404, 113 S. Ct. 853, 862, 122 L. Ed. 2d 203 (1993).

confrontations, a reasonable juror could still quite possibly have concluded that Sibley had acted with murderous intent, rather than out of self-defense. Such generalized evidence concerning the victim's character would not, in itself, be enough to support a claim of actual innocence.

The stepson's testimony as to whether he called for help is simply irrelevant to the question of Sibley's guilt. As the district court found, it could at most "be used to attack the credibility of the State's witness who testified that she called the police because of a child's call for help." A dispute over such a tangential question does not undermine our confidence in Sibley's guilty in the least. Finally, Sibley's allegation that his wife saw one of her shots hit Motley in the chest is also of no avail. Without more, we are unable to conclude that a jury would necessarily infer that she fired the fatal shot. Moreover, as the district court held, "[t]he issue of which of the two persons who admittedly shot at Sgt. Motley . . . actually fired the fatal shot is irrelevant as long as Sibley himself had the requisite intent to kill." Consequently, Sibley has failed to satisfy the Schlup standard of actual innocence, and so is not entitled to consideration of the merits of his constitutional claims.

III.

Sibley also contends that his conviction should be vacated based on Ring v.

24

Arizona, 536 U.S. at 584, 122 S. Ct. at 2428. In Ring, the Supreme Court held that a jury, and not a judge, must make all findings of fact, including aggravating factors, that render someone eligible for the death penalty. Id. at 609, 122 S. Ct. at 2443 (holding that "a sentencing judge, sitting without a jury, [may not] find an aggravating circumstance necessary for imposition of the death penalty"). In Turner v. Crosby, 339 F.3d 1247, 1283 (11th Cir. 2003), however, we expressly held that Ring is not retroactive to death sentences that were imposed before it was handed down. The Supreme Court recently endorsed this view in Schriro v. Summerlin, No. 03-526, 2004 U.S. LEXIS 4574, at *19 (June 24, 2004) ("Ring announced a new procedural rule that does not apply retroactively to cases already final on direct review."). Under Turner and Summerlin, a petitioner may not appeal a conviction or bring a habeas attack based on Ring violations that occurred before Ring was handed down. Consequently, we reject Sibley's Ring claim out of hand.

For these reasons, the judgment of the district court, in its entirety, is AFFIRMED.

25