**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 24-11135

_____

ROBERT J. TREASE,

*Petitioner-Appellant,*

*versus*

SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS,

ATTORNEY GENERAL, STATE OF FLORIDA,

*Respondents-Appellees.*

_____

Appeal from the United States District Court
for the Middle District of Florida

D.C. Docket No. 8:11-cv-00233-SDM-TGW

_____

Before JORDAN, ROSENBAUM, and ABUDU, Circuit Judges.

PER CURIAM:

Robert Trease was sentenced to death following a jury trial and convictions for first-degree murder, burglary, and robbery with a firearm—crimes that he maintains he did not commit. He now seeks a retrial through the actual-innocence gateway. Trease bases his claim on an alleged violation of his Sixth Amendment right to effective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984).

On February 4, 2011, Trease filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 in the Middle District of Florida. The district court held that his petition was untimely under the Anti-Terrorism and Effective Death Penalty Act of 1996's ("AEDPA") statute of limitations and was procedurally defaulted.

To determine whether Trease was able to pass through the actual-innocence gateway *Schlup v. Delo*, 513 U.S. 298, 314 (1995), describes, the district court directed Trease to file a proffer detailing the newly discovered evidence he claims shows he is innocent.

But in doing so, the district court directed Trease to "specifically cite the record" to show that he had exhausted his actual-innocence claim. After reviewing the proffer, the district court held that Trease could not pass through the actual-innocence gateway and dismissed his claim based on the procedural defects.

After careful review and with the benefit of oral argument, we vacate the district court's ruling. While we express no opinion regarding the merits of Trease's actual-innocence claim, we conclude that the district court erred in two respects in dismissing Trease's petition.

First, the district court erred in finding that Trease's petition was untimely. When the state court reinstated his appeal, it put Trease back in the same position he had been in, for purposes of the AEDPA statute of limitations, on the day that his counsel filed a postconviction motion to determine his competency. So because Trease's petition was timely as of the day the motion was reinstated, his petition satisfied the statute-of-limitations requirement.

Second, the district court erred when it directed Trease to cite to the state-court record to show that he had "exhausted" his actual-innocence claim. Because Trease seeks review of his actual-innocence through a gateway that permits a petitioner to overcome procedural defects like exhaustion, he need not show that he has "exhausted" his actual-innocence claim at the state level.

For these reasons, we vacate the district court's order and remand with directions for the district court to order Trease to submit any new, credible factual material not presented at trial,

including affidavits from individuals purportedly prepared to testify on Trease's behalf, to support his claims of actual innocence, and for the district court to evaluate those claims based on Trease's new submissions.

## I.    BACKGROUND

### A.  Underlying Events

On December 11, 1996, Trease was convicted and sentenced to death for the murder of Paul Edenson.  Edenson was killed in 1995.

The jury recommended the death sentence 11 to 1, and the trial court sentenced Trease to death on January 22, 1997.  The underlying details of the murder are not directly at issue in our ruling today, so we don't discuss them here.  But the district court's order, *see Trease v. Sec'y, Dep't of Corr.*, No. 8:11-CV-233-T-23TBM, 2014 WL 4791996, at *7–9 (M.D. Fla. Sept. 24, 2014) ("Order"), and the state-court opinions concerning Trease's appeal describe those details. *See Trease v. State* ("*Trease I*"), 768 So. 2d 1050, 1052 (Fla. 2000); *see also Trease v. State* ("*Trease II*"), 41 So. 3d 119, 120 (2010).

### 1.  State Postconviction Proceedings

On August 17, 2000, the Florida Supreme Court denied Trease's direct appeal.  *Trease I*, 768 So. 2d at 1057.  And it denied his motion for rehearing on October 11, 2000.  *Id.* at 1050.  Trease did not file a petition for certiorari with the U.S. Supreme Court at that point, so his conviction became final on January 9, 2001 (90 days after the Florida Supreme Court denied rehearing).

Under AEDPA, petitioners have a one-year statute of limitations from when the state-court judgment becomes final to file a federal habeas petition.  *See* 28 U.S.C. § 2244(d).  Because that period began on January 9, 2001, without tolling, this deadline would have run on January 9, 2002.

On March 19, 2001, before the deadline to file a federal habeas petition ran, Trease moved pro se in the state postconviction court to dismiss counsel of record and have his death sentence carried out.  A couple months later, on May 22, 2001, Trease's counsel (not yet discharged) moved in the state postconviction court to vacate Trease's convictions and sentence and contemporaneously moved to determine his competency.

The trial court held a hearing, found Trease competent, and discharged his collateral counsel on May 30, 2001.  *See Trease II*, 41 So. 3d at 121.

Then the State set Trease's execution for February 7, 2002.  But on February 5, 2002, the governor sua sponte stayed Trease's execution pending the Supreme Court's decision in *Ring v. Arizona*, 536 U.S. 584 (2002).

Four months later, on June 18, 2002, Trease moved in the trial court asking to reinstate his postconviction proceedings, and he authorized discharged counsel to represent him again.  The motion explained that Trease had "recently decided to accept representation" and to "challenge his conviction and sentence of death."

On October 1, 2002, the trial granted the motion to reinstate the May 22 postconviction motion. So it ordered the May 22, 2001, motion "reinstated" and specifically ruled that Trease's May 22, 2001, postconviction motion was **"being treated as timely and properly filed under** Fla. R. Crim. P. 3.851."

During the proceedings that followed, Trease again changed his mind about moving forward with his appeal and attempted to discharge counsel and waive postconviction proceedings. *See Trease II*, 41 So. 3d at 121. The trial court informed Trease and his counsel that it would not decide his motion to remove counsel until the (May 22, 2001) postconviction motion was resolved. Ultimately, the court denied the postconviction motion on May 9, 2007. *Id.*

A couple months later, on July 5, 2007, Trease's defense counsel filed a notice of appeal of the trial court's denial of the postconviction motion. *Id.* Meanwhile, Trease made several more efforts to discharge his counsel and waive postconviction proceedings. *Id.*

On June 19, 2008, at the State's request, the Florida Supreme Court temporarily remanded Trease's case to the trial court so the trial court could conduct proceedings on Trease's competency and his desire to discharge his counsel. *Id.*

On October 2, 2008, the trial court—having accepted temporary jurisdiction from the Supreme Court—held a hearing on Trease's competency and his desire to end proceedings. *Id.* at 121. During that hearing, Trease explained that he wanted to discharge counsel and abandon postconviction proceedings because, he said,

"I'm essentially tired of living the life that I'm living, and I'm just not going to do it any longer, and these are the reasons. And b[y] the Florida Supreme Court, I have the right to end my appeals." *Id.* The trial court explained to Trease that forcing the withdrawal of his appeal could destroy his ability to further challenge his conviction. *Id.* at 122.

Recognizing the likelihood that any future claim he brought would be procedurally defaulted, the trial court asked Trease, "Do you understand that if your lawyers are dismissed and your appellate review, your postconviction action is dismissed, that could result in waiver of any legal barriers to the State's ability to enforce the death penalty in this case[?]" *Id.* Trease replied, "Well aware of that, your Honor. Well aware of that." *Id.*

The court continued, "Do you understand your right to further appeal will be forever lost?" *Id.* Trease responded, "I also understand that." *Id.* So then the court asked, "Are you aware that your ability to file for release in federal court might be affected by dismissing the state court proceeding?" *Id.* And once again, Trease replied, "I'm well [aware] of that as well, Judge." *Id.* (alteration in original).

Trease's counsel argued against discharging counsel and dismissing the postconviction proceedings because Trease's trauma and brain damage affected his decision-making and ability to regulate his emotions, and counsel "question[ed]" his competency. *Id.*

But the trial court granted Trease's motions to dismiss counsel and end further appellate review. *Id.* The court found that

Trease was fully aware of the consequences and was competent, and his waiver of rights was knowing, intelligent, and voluntary. *Id.*

His discharged counsel then appealed to the Florida Supreme Court. *Id.* While the appeal was pending, Trease sent a letter to the Florida Supreme Court stating that he no longer wanted to give up his appeals. *Id.* at 123 ("Trease sent a letter to Tom Hall, the Clerk of [the Florida Supreme Court], stating: "I wish on this date-2-10-09 to go forward with my 3.850 and not give up my appeals."). The Florida Supreme Court affirmed the district court's order to dismiss counsel and the postconviction appeal. *Id.* Justice Pariente dissented on the ground that the issues raised in Trease's postconviction habeas petition concerning his innocence outweighed the court's interest in finality. *Id.* at 127, 128 (Pariente, J., dissenting) ("We should err on the side of caution to avoid the chance of Trease being executed with outstanding unresolved questions about his guilt and possible innocence.").

Trease filed a petition for certiorari, which the Supreme Court denied. *Trease v. Florida*, 562 U.S. 1225 (2011).

### 2. *The District Court's Ruling on Trease's Federal Habeas Petition*

On February 4, 2011, Trease filed a Section 2254 petition for a writ of habeas corpus in the Middle District of Florida. He raised several grounds for relief, including actual innocence and violations of his right to effective assistance of counsel.

Specifically, Trease argued that his conviction was based upon now-debunked science and the testimony of a co-defendant (Hope Siegel) who has since confessed that *she* committed the murder. In other words, Trease contended, he is innocent, so his execution would violate the Eighth and Fourteenth Amendments. Besides that, Trease argued that his trial counsel was ineffective, in violation of the Sixth, Eighth, and Fourteenth Amendments.

At first, the district court dismissed the petition without prejudice as premature because of Trease's then-pending petition for certiorari. But after Trease moved for reconsideration, the district court vacated its earlier dismissal order and reopened the case. It did so because Trease's "federal one-year limitation re-commenced when the state proceedings concluded because a petition for the writ of certiorari from the denial of his state Rule 3.851 petition for post-conviction relief is not a part of the state proceedings." Still, Florida moved to dismiss the habeas petition as time-barred.

i.   District Court's "Time-Barred" Ruling.

In its first timeliness order (in 2014), the district court agreed with Florida, holding that Trease's petition was untimely. That's because, in the district court's view, Trease's conviction became final on November 15, 2000—ninety days after Trease was allowed to petition for a writ, after his direct appeal concluded on August 17, 2000. So the statute of limitations ("SOL") expired a year after that, absent any tolling. And the court found tolling inapplicable because even though Trease's postconviction counsel filed a motion on May 22, 2001, counsel did so only *after* Trease repeatedly

attempted to discharge his postconviction counsel.  So the district court reasoned that counsel's May 22 motion wasn't authorized.

The district court concluded that "[b]ecause he adamantly disavowed anyone filing anything to challenge either his conviction or his sentence, Trease is entitled to no tolling for [his postconviction counsel's] unauthorized post-conviction motion."  As a result, the district court determined, Trease's petition was untimely.

Still, the district court ordered briefing on whether Trease could satisfy the actual-innocence gateway exception to the statute of limitations.  In its briefing order, the district court directed Trease to "present the factual and legal basis for his claim of 'actual innocence.'"  But in doing so, the district court instructed Trease to "specifically cite the record showing that he exhausted this claim."

ii.  District Court's "Actual Innocence Ruling"

a.  Trease's Actual-Innocence Proffer

In accordance with the district court's instructions, Trease proffered evidence of actual innocence.  He argued that new evidence now exists to support the defense he put on at trial.  This new evidence, as Trease describes it, consists of post-trial evidentiary-technology developments, additional confessions Siegel allegedly made to other witnesses, and further development of crime-scene and autopsy evidence.

We begin with post-trial evidentiary-technology developments.  At trial, the state presented very little physical evidence linking Trease to the murder.  The only form of physical evidence

included the results from the comparative bullet lead analysis ("CBLA") test. Those results purportedly showed that bullet fragments at the crime scene matched a bullet removed from a gun that the FBI recovered from Trease in Pennsylvania. And the State used those results to bolster Siegel's testimony that Trease had committed the murder. But after trial, the FBI discontinued the use of CBLA evidence as unreliable.

As for the additional confessions Trease points to, Siegel allegedly confessed to at least two additional people who did not testify at trial, that she (not Trease) killed Edenson. According to the proffer, those two people are prepared to so testify now.

Trease also argues that post-trial development of crime-scene and autopsy evidence further support that Siegel alone committed the killing. Experts that postconviction counsel retained—a crime-scene analyst (Bob Tressel) and a forensic pathologist (Dr. Jonathan Arden)—now say that crime-scene analysis and Siegel's confessions support the conclusion that Siegel committed the murder. As these experts view things, the contact gunshot was consistent with a right-handed shooter (meaning Siegel, not Trease); the killer abandoned the gun for a knife (which Trease argues is because the gun jammed and Siegel didn't know how to unjam it, but Trease would've known how to do that); and the autopsy supports the conclusion that Edenson may have been shocked with a stun gun on his right arm (and Siegel, not Trease, allegedly owned a stun gun).

In accordance with the district court's directions to "specifically cite the record showing that he exhausted this claim," Trease's proffer largely consisted of citations to the state-court record.  So it did not contain affidavits from individuals who allegedly are prepared to testify about Siegel's confessions.

The district court denied Trease's request for an evidentiary hearing on this evidence, which was not heard at trial.  In September 2014, the district court held that Trease was not entitled to the actual-innocence gateway, dismissed the petition as untimely, and denied a certificate of appealability ("COA").

A month later, Trease filed a Rule 59(e) motion to alter or amend the judgment.

### 3.  Stay and Operative District Court Order

On August 12, 2015, the district court stayed the case pending the U.S. Supreme Court's decision in *Hurst v. Florida*, 575 U.S. 902 (2015), concerning the constitutionality of Florida's capital-punishment system.  The district court dissolved the stay on June 27, 2019.  Then it vacated its prior order (which had dismissed the petition as untimely), and it issued a new order in 2024 dismissing the petition and denying a COA.

In that amended 2024 order (the operative district court order for our purposes), the district court again found that the statute of limitations wasn't tolled.  And again, the court reasoned that Trease "disavowed counsel's pursuing post-conviction relief," and when Trease finally decided he wanted postconviction review and

the state court "reinstated" the motion, it was too late at that point for the "reinstatement" to be effective. The district court also reviewed times Trease more recently disavowed counsel and sought to dismiss the federal habeas case, too, calling the behavior "manipulative[.]"

Besides finding Trease's claim untimely, the district court also determined Trease had procedurally defaulted it. The court reasoned that, when Trease abandoned his appeal in 2010, *see Trease II*, 41 So. 3d at 121–22, Trease prevented the Florida Supreme Court from reviewing his claim. So, the court concluded, Trease failed to exhaust state remedies, in violation of AEDPA.

Next, the court considered whether it could hear Trease's claim, anyway, through the actual-innocence gateway. It concluded it couldn't.

As the district court saw things, the FBI's suspension of the CBLA test was not, itself, proof of actual innocence, and Trease's other proffered evidence was "largely cumulative to defense counsel's same attack on her credibility at trial." So the district court held that none of the evidence submitted in the proffer was sufficient to open the actual-innocence gateway.

For these reasons, the district court declined to hold an evidentiary hearing on or reach the merits of Trease's claims of ineffective assistance of counsel. And it again denied Trease a COA.

Trease timely appealed.

In November 2024, we granted a COA on five issues:

1. Whether the district court erred in ruling that Trease untimely filed his 28 U.S.C. § 2254 petition (whether the May 22, 2001, petition was properly filed and if so, whether the reinstatement motion tolled the statute of limitations from the time of filing through June 24, 2010);

2. Whether the district court erred in concluding that Trease cannot meet the actual-innocence gateway;

3. Whether the Florida courts' denial of Trease's claim of ineffective assistance that trial counsel failed to reasonably investigate the crime scene and manner of death was contrary to or an unreasonable application of *Strickland v. Washington*, 466 U.S. 668 (1984);

4. Whether the Florida courts' denial of Trease's claim of ineffective assistance that trial counsel failed to adequately investigate Hope Siegel's mental health was contrary to or an unreasonable application of *Strickland v. Washington*, 466 U.S. 668 (1984); and

5. Whether the Florida courts' denial of Trease's claim of jury misconduct (both through juror exposure to external influences in terms of comments jurors may have overheard, and through the "group prayer" that Trease alleges took place during deliberations) violated Trease's rights under the First, Sixth, Eighth, and Fourteenth Amendments.

## II.    STANDARD OF REVIEW

"We review de novo a district court's dismissal of a § 2254 petition as time-barred under § 2244(d)."  *Green v. Sec'y, Dep't of Corr.*, 877 F.3d 1244, 1247 (11th Cir. 2017).  We similarly review de novo the district court's answers to questions of law.  *Wyzykowski v. Dep't of Corr.*, 226 F.3d 1213, 1215 (11th Cir. 2000).

## III.    DISCUSSION

We begin with Florida's argument that we should vacate the COA.  Then, we address the timeliness and procedural default questions, followed by the actual-innocence-gateway issue.  We do not address the merits of Trease's actual-innocence claims because the district court did not reach them.  Our ruling today instead concerns the instructions Trease received for presenting his actual-innocence claim.

*A.    We vacate the fourth and fifth COA issues.*

In *Curry v. Secretary, Florida Department of Corrections*, No. 23-13486, 2025 WL 25855 (11th Cir. Jan. 3, 2025), we noted that COAs "'must specify what issue or issues raised by the prisoner satisfy' the requirement that 'the applicant has made a substantial showing of the denial of a constitutional right.'"  *Id.* at *1 (quoting *Spencer v. United States*, 773 F.3d 1132, 1137 (11th Cir. 2014) (en banc)).

Florida asks us to vacate the COA order because "Trease did not seek a COA" on the exact five issues, as we wrote them in our order, in his COA application.

We agree in part and disagree in part. Trease properly sought a COA on the first three issues.

That's plain in the case of the first two issues. Trease sought a COA explicitly on "Issue 1: The district court's holding that Trease's Petition was untimely is debatable," and "Issue Two: Even if Trease's Petition is held to be untimely, reasonable jurists could debate that evidence of Trease's actual innocence overcomes the statute of limitations." Those are the first two issues for which we granted a COA: Issue One: "Whether the district court erred in ruling that Trease untimely filed his 28 U.S.C. § 2254 petition (whether the May 22, 2001, petition was properly filed and if so, whether the reinstatement motion tolled the statute of limitations from the time of filing through June 24, 2010)"; and Issue Two: "Whether the district court erred in concluding that Trease cannot meet the actual-innocence gateway."

Trease also effectively sought a COA on the third question regarding ineffective assistance of counsel. In his COA motion, Trease specifically claimed that "trial counsel were ineffective in violation of the Sixth, Eighth, and Fourteenth Amendments." Trease argued that "trial counsel failed to obtain the assistance of experts to evaluate the crime scene and manner of death." And he continued, "With the assistance of a crime scene expert and a forensic pathologist, defense counsel could have presented evidence" contradicting Siegel's story and the states' experts' assessment of the crime scene. In substance, then, Trease sought a COA on the third question on which we granted the COA.

As for the fourth and fifth issues, related to trial counsel's failure to adequately investigate Siegel's mental-health issues and as to the group prayer, we agree that Trease did not specifically seek a COA on these issues. That is, Trease failed to provide enough information for us to properly review the fourth and fifth issues. So we grant Florida's request to vacate the fourth and fifth issues in the COA.

B.   *We agree with the district court that Trease's petition is procedurally defaulted.*

In its order dated December 16, 2011, the district court held that Trease's petition was untimely, under 28 U.S.C. § 2244(d). And in its later order on March 7, 2024, the district court held that Trease's petition was also procedurally defaulted because he had failed to exhaust state remedies.

1. *Trease's petition was timely.*

As to the timeliness ruling, we respectfully disagree. We conclude Trease timely filed his petition.

The touchstone of our ruling is the state postconviction court's determination, when it reinstated the May 22, 2001, motion, that the motion was "properly filed" under Florida law. The postconviction court specifically ordered the May 22, 2001, motion "reinstated" and ruled that Trease's May 22, 2001, postconviction

motion is "**being treated as timely and properly filed** under" Fla. R. Crim. P. 3.851."[1]

We must defer to the state court's judgment on whether a motion was "properly filed." *Green*, 877 F.3d at 1248. The state postconviction court treated Trease's petition as timely and properly filed, so we must as well. *See id.* When the postconviction court reinstated the May 22 motion on October 1, 2002, the postconviction court put Trease back in the same position he was in on May 22, with respect to the statute of limitations.[2] And while that May 22 motion remained pending, the statute of limitations was tolled. Tolling didn't end until the Florida Supreme Court denied Trease's appeal of the denial of his postconviction motion, on June 24, 2010. At that point, 232 days remained on the federal clock (the deadline was then February 11, 2001). Trease filed his habeas petition on February 4, 2011, a week before the February 11, 2001, deadline. So it was timely.

The Supreme Court's decision in *Jiminez v. Quarterman*, 555 U.S. 113, 118–19 (2009), also supports our conclusion. *Jiminez* tells us that when a state court grants a criminal defendant the right to

---

[1] Trease did not sign the postconviction motion, but under Florida law, an attorney's motion for competency determination can "replace the signed oath by the defendant that otherwise must accompany a rule 3.850 motion." *Carter v. State*, 706 So. 2d 873, 875 (Fla. 1997). So we also disagree with the district court that the petition was not properly filed based on Trease's technical disavowal of it.

[2] On May 22, 2001, 133 days had lapsed on the AEDPA clock, so tolling began with 232 days remaining.

file an out-of-time direct appeal during state collateral review, this resets the date when a conviction becomes final under AEDPA. *Id.* at 121. The Court in *Jiminez* reached that result based on AEDPA's goal of giving state courts a full opportunity to correct constitutional deficiencies. *Id.* The same rationale applies here.

### 2. *Trease failed to exhaust state remedies.*

Even so, our ruling on timeliness does not save Trease's habeas petition. That's because we agree with the district court that Trease failed to exhaust state remedies.

Under AEDPA, a petitioner in state custody must present each claim to the state courts, including to the state court of last resort, before raising the claim in federal court. *See* 28 U.S.C. § 2254(b)(1)(A); *see also O'Sullivan v. Boerckel*, 526 U.S. 838, 847–48 (1999).

In its order dated September 24, 2014, the district court explained that when Trease "forced the withdrawal of his post-conviction appeal," he "precluded Florida's supreme court from reviewing the merits of his post-conviction claims, and [. . .] failed to exhaust his available state court remedies."

As the district court noted, citing *Harris v. Reed*, 489 U.S. 255, 262 (1989), to overcome the procedural default, Trease must establish either "'cause and prejudice' sufficient to excuse his failure to present his evidence in support of his first federal petition" **or** pass through the actual-innocence gateway by showing that "his constitutional claims [. . .] fall[] within the 'narrow class of cases . . .

implicating a fundamental miscarriage of justice[.]'" *Schlup*, 513 U.S. at 314–15 (quoting *McCleskey v. Zant*, 499 U.S. 467, 494 (1991)).

We agree that Trease cannot overcome procedural default by showing "cause and prejudice." That's so because Trease himself withdrew his postconviction motion and abandoned his appeal in the state-court system. *Trease II*, 41 So. 3d at 121–23. "To establish 'cause' for procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999) (citation omitted). But Trease himself brought about the early end to his appeals in the state system. So he can't show that some external cause is responsible for his procedural default. Actual innocence is the only avenue that could permit Trease to have his constitutional claims heard on the merits.

C.    *The district court erred when it directed Trease to cite to the state court record in his actual-innocence proffer.*

Florida contends that Trease can't pass through *Schlup*'s gateway because he "never presented any affidavits or specifics regarding the various witnesses' version of events to either the state court or to the district court." In support, Florida cites to *Sibley v. Culliver*. There, we denied a petitioner's request for an evidentiary hearing because the petitioner's "actual innocence claim [wa]s hindered at the outset by a fatal shortcoming—he ha[d] not presented any actual evidence to the district court." 377 F.3d 1196, 1206 (11th Cir. 2004). Specifically, we took issue with the fact that the

petitioner "offer[ed] no affidavits from" the witnesses he said supported his actual-innocence claim. *Id.*

We agree with Florida that to pass through the actual innocence gateway, Trease must support his allegations of innocence with "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324. But that doesn't dispose of Trease's claim here.

As Trease points out, his lengthy written proffer of his actual-innocence-gateway evidence "was done [in] compliance with the district court's briefing order, which directed Trease to 'specifically cite' to the state court record."

Indeed, the district court's order on the State's motion to dismiss directed Trease to "specifically cite the record showing that he exhausted [his] claim" of actual innocence. In his reply brief on appeal, Trease argues that the district court's instruction reflected the district court's mistaken "belief that the innocence gateway is a 'claim' that must be 'exhausted,' instead of a procedural mechanism."

Trease is correct that he need not "exhaust" his invocation of actual innocence in state court. Trease asserts actual innocence under *Schlup*, 513 U.S. at 314, solely for the purpose of permitting him to overcome the procedural bar of failure to exhaust state remedies. Used in this fashion, Trease's assertion of actual innocence need not, itself, be exhausted. *See Arthur v. Allen*, 452 F.3d 1234, 1245–46 (11th Cir.), *opinion modified on reh'g*, 459 F.3d 1310 (11th Cir.

2006) (explaining that the actual innocence gateways allow a petitioner to overcome a procedural bar like untimeliness or exhaustion when a petitioner shows his "conviction probably resulted from a constitutional violation"). A *Schlup* claim is "not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." 513 U.S. at 315.

So the district court erred in directing the parties to cite the record to show that Trease "exhausted" his invocation of actual innocence. Rather, as Florida points out, habeas petitioners must generally present "new evidence" including affidavits to make a threshold showing of actual innocence to use the actual-innocence gateway. *Sibley*, 377 F.3d at 1206.

To the extent Trease has failed to do so, it appears that his failure at this stage may have resulted from the fact that he was attempting to comply with the district court's mistaken directive requiring him to cite the state-court record in support of his effort to use the actual-innocence gateway. So we vacate the district court's order dated March 7, 2024, holding that Trease failed to meet the actual-innocence gateway. We also vacate the district court's December 16, 2011, order directing Trease to submit briefing on actual innocence with citations to the state record showing that Trease's actual-innocence claim was exhausted.

As we did in *Wyzykowski*, 226 F.3d at 1219, we "decline to address the factual issue whether [the petitioner] can make a showing of actual innocence, preferring that the district court do so in

the first instance." If we are called upon to address the question of Trease's actual innocence again after further proceedings, we would "prefer to have the benefit of the district court's legal analysis" of the newly discovered evidence Trease can proffer. *Id.*

We remand Trease's case to the district court with instructions for the district court to direct Trease to submit new factual material, such as affidavits, physical evidence, expert reports, or other competent evidence that was not presented to the jury at trial that shows actual innocence. Trease "must make a threshold showing of actual innocence to warrant a hearing. The timing of the submission is relevant, as is the likely credibility of the affiants." *Sibley*, 377 F.3d at 1206 (citation and quotation marks omitted). The district court should analyze any new filings and determine whether "an evidentiary hearing on the allegations contained in the affidavits would produce the sort of reliable evidence of actual innocence that *Schlup* demands[.]" *Id.* at 1206–07 (citation and quotation marks omitted).

Then, if an evidentiary hearing is warranted based on new filings, the district court must determine whether, in considering the totality of the now-available evidence, it is "more likely than not that no reasonable juror would have convicted" Trease. *Schlup*, 513 U.S. at 327.

## IV.    CONCLUSION

For the reasons we've explained, we vacate the district court's order dated March 7, 2024, which held that Trease's petition was untimely and that he could not meet the actual-innocence

gateway.  We also vacate the district court's briefing order dated December 16, 2011, directing Trease to cite the state record showing that he exhausted his claim of actual innocence.  Without expressing an opinion on the merits of Trease's actual-innocence claim, we remand this case to the district court with instructions to revisit the issue of Trease's actual innocence consistent with this opinion.

**VACATED and REMANDED.**